UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

CHRISTEN DALE,

*Petitioner*,

– against –

EILEEN RUSSELL,

*Respondent*.

---

**MEMORANDUM & ORDER**
24-cv-00143 (NCM)

**NATASHA C. MERLE**, United States District Judge:

Christen Dale, who is currently incarcerated at Bedford Hills Correctional Facility, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dale was convicted after a jury trial of one count of first-degree manslaughter, two counts of second-degree assault, one count of fourth-degree criminal possession of a weapon, and one count of endangering the welfare of a child. Appearing *pro se*, Dale brings this petition[1] for habeas relief, alleging, among other things, that she received ineffective assistance of counsel during trial, was coerced to involuntarily waive her *Miranda* and speedy arraignment rights, and was denied a fair trial based on admission of illegally obtained statements. For the reasons set forth below, Dale's petition is denied.

---

[1] The Court hereinafter refers to the Petition for Writ of Habeas Corpus, ECF No. 1, as the "Petition"; respondent's Opposition to Petition for a Writ of Habeas Corpus, ECF No. 6, as the "Opposition"; and the Reply to Affirmation in Opposition to Petition for Writ of Habeas Corpus, ECF No. 8, as the "Reply."

## BACKGROUND

### A. *The Crime and Arrest*

The state presented evidence of the following facts at trial. On February 25, 2015, Dale repeatedly struck her nephew, Ethan Ali, who was four years old at the time, on his head and body. Opp'n, Ex. B ("Trial Tr.") 261:3–11, ECF No. 6-7. This caused extensive confluent "subcutaneous bleeding," and consequently led to Ethan's death. Trial Tr. 261:12–262:5. Dale's boyfriend at the time, Kenroy Skeete, returned home to find Ethan unresponsive in Dale's lap and called 911. Trial Tr. 314:17–316:9. Soon after police officers, firefighters, and EMTs arrived at the apartment, Ethan was pronounced dead.

In response to questions, Dale informed EMTs that she had struck Ethan with a belt. Trial Tr. 70:2–72:3, ECF No. 6-5. When police officers asked for the belt, Skeete retrieved it for them. Trial Tr. 72:1–3. Dale was then brought to the 67th Precinct by an officer, was given her *Miranda* warnings, and was interviewed by the police from about 4:15 PM to 7:10 PM. Trial Tr. 198:19–25; 203:5–7; 218:10–15, ECF No. 6-6. During the initial interview, Dale told detectives that she and Ethan had an "altercation" because Ethan refused to do his homework. Opp'n, Ex. O, Videos of Def.'s Interviews at the 67th Precinct ("Video Statement") 16:22:48–16:24:51, ECF No. 6-22; *see also* Trial Tr. 172:3–7, 180:19-25, ECF No. 6-3. Dale admitted that she had hit Ethan with a belt five times and sent him to bed. Video Statement 16:35:30-16:38:10. Dale estimated that she struck Ethan roughly three hours before she called 911. Video Statement 16:42:08–16:43:30. Dale further admitted that she had previously punished Ethan by striking him with a belt. Video Statement 16:47:32-16:48:15. That same evening, at 11:45 PM, Dale signed a waiver of her speedy arraignment rights. Trial Tr. 210:14–18, ECF No. 6-3.

Dale spent that night and most of the following day, February 26, 2015, at the precinct. Trial Tr. 217:9–218:17, ECF No. 6-3. The police interviewed her again that day between about 7:02 PM and 7:52 PM. Trial Tr. 217:18–218:11. During all interviews, Dale told authorities that Ethan was unharmed when Skeete and Natasha, her sister and Ethan's mother, left the apartment on the day of Ethan's death. Dale was arrested around 9:30 PM on February 26, 2015. Trial Tr. 219:7–20.

B. *Pretrial Proceedings &* Huntley *Hearing*

Dale was charged with one count of Manslaughter in the First Degree (N.Y. Penal Law ("P.L.") § 125.20[4]), four counts of Assault in the Second Degree (P.L. §§ 120.05[2], 120.05[4], 120.05[8], 120.05[9]), one count of Criminal Possession of a Weapon in the Fourth Degree (P.L. § 265.01[2]), and one count of Endangering the Welfare of a Child (P.L. § 260.10[1]).

Prior to her trial, petitioner moved to suppress her statements at the precinct. On May 23, 2016, Justice Miriam Cyrulnik of the New York State Supreme Court, Kings County, held a *Huntley* hearing[2] upon Dale's motion. *See* Opp'n, Ex. A, Transcript of *Huntley* Hearing ("Huntley Hr'g Tr.") 12, ECF No. 6-1.[3] On September 6, 2016, the court held oral argument based on the testimony elicited at the *Huntley* hearing. *See* Opp'n, Ex. A, Transcript of *Huntley* Hearing Oral Argument ("Huntley Arg. Tr.") 32, ECF No. 6–1. Defense counsel moved to suppress Dale's statements while in custody on the basis that

---

[2]    A *Huntley* hearing assesses the voluntariness of a defendant's post-arrest statements. *See People v. Huntley*, 15 N.Y.2d 72 (1965).

[3]    Where necessary, page numbers for relevant submissions refer to the page numbers assigned in ECF filing headers.

they were made under "coercive" conditions that undermined the statements' voluntariness. *See* Huntley Arg. Tr. 3:9–4:6.

The Court denied defendant's motion to suppress her statements during interrogation and declared them voluntary. Huntley Arg. Tr. 9:23–10:3, ECF No. 6-1. The *Huntley* ruling was based on the court's finding that Detective Teahan's testimony concerning the defendant's statements was credible. Huntley Arg. Tr. 7:18–19. Justice Cyrulnik agreed that Dale was in custody during her interviews. Huntley Arg. Tr. 7:22–23. Additionally, Justice Cyrulnik reviewed the videotaped interrogation "from beginning to end" and observed that Dale received *Miranda* warnings, indicated that she understood each question, and agreed to speak with detectives. Huntley Arg. Tr. 7:12-8:2. Considering many factors of petitioner's interrogation, Justice Cyrulnik found that Dale was "not coerced or forced to speak to officers at any point" and "did not appear to be overwhelmed to the point of not understanding what was taking place during the interview." Huntley Arg. Tr. 8:15–23.

### C. Trial, Sentencing, and Motion to Vacate

On May 16, 2017, the jury announced a verdict of guilty on all five counts. Trial Tr. 498:19–500:4, ECF No. 6-9. On June 1, 2017, the Supreme Court of Kings County imposed a sentence of twenty-two years of imprisonment, with five years of post-release supervision, on the manslaughter count; seven years of imprisonment, with three-years of post-release supervision, on each of the two assault counts; and one year of imprisonment on each of the weapon possession and child endangerment counts, all to run concurrently. *See* Opp'n, Ex. C ("Sentencing Tr.") 18:21–19:10, ECF No. 6-10.

Five days after her sentencing, before perfecting her direct appeal, petitioner filed a *pro se* motion to set aside or vacate her sentence pursuant to New York Criminal

Procedure Law ("C.P.L.") § 440.10.[4] *See* Opp'n, Ex. D ("440 Motion") 3–7, ECF No. 6-11. Dale's 440 Motion raised five claims: (1) an ineffective assistance of counsel claim, asserting that her trial counsel failed "to use important evidence or testimony at trial," and to otherwise object to false or inconsistent testimony; (2) that, at the *Huntley* hearing, a detective falsely testified that Dale knew she "could leave at anytime [sic]," despite Dale's impression that she was locked in the interrogation room and not free to leave; (3) that new evidence showing defendant was heavily medicated at the time of Ethan's death might have led to a more favorable sentence; (4) photo evidence of Ethan's autopsy was only shown at trial to "cause shock and move the jury" to convict; and (5) that a responding police officer perjured himself by having told the grand jury that he spoke to Dale but subsequently admitting he never did so. *See generally* 440 Mot, ECF No. 6-11.

On September 13, 2017, the New York Supreme Court denied Dale's motion on a number of grounds. First, the court found Dale's motion procedurally barred under C.P.L. § 440.10(2)(b) because her suppression and trial judgments were appealable and the record was sufficient to permit review by an appellate court. *See* Opp'n, Ex. F ("440 Order") 2–3, ECF No. 6-13. Second, the Supreme Court denied all of Dale's 440 claims under C.P.L. § 440.30(4)(d) for being conclusory, self-serving, and "unsupported by any other affidavit or evidence." 440 Order 3–4. Third, Dale's argument regarding evidence of her medication failed under C.P.L. § 440.10(1)(g) because she failed to demonstrate that the evidence was "newly discovered." 440 Order 4–5. Finally, the court denied

---

[4]    Although Petitioner's § 440 Motion purported to be a motion to set aside her *sentence* under § 440.20, *see* 440 Mot. 2, ECF No. 6-11, the Petition actually appears to seek vacatur of her *conviction*—the utility of a § 440.10 motion. Accordingly, and in line with the Court's duty to construe *pro se* petitions liberally, this opinion interprets Petitioner's motion as her under § 440.10.

grounds (1), (2), (4), and (5) under C.P.L. §§ 440.30(4)(a) & (b) for failing to state a claim by providing no evidence to support her claims. *See* 440 Order 5–6. Dale did not seek review of the denial of this motion. According to the Petition, Dale did not appeal any of these denials on the basis that she "[n]ever received an answer." Pet. 6, 8, 10.

### D. Direct Appeal

Over four years later, on January 7, 2022, Dale perfected her direct appeal to the Second Department with the assistance of counsel. Her appeal was based on three main grounds: (1) that the state failed to prove that she knowingly and intelligently waived her *Miranda* rights during her interrogation; (2) in the alternative, that Dale's trial counsel was ineffective for neglecting to argue that the state failed to prove this waiver; and (3) that her prison sentence of twenty-two years was excessive. *See* Opp'n, Ex. H ("Appellant's Br."), 31, 41, 44, ECF No. 6-15.

The Second Department unanimously affirmed Dale's judgment of conviction on July 20, 2022. *See People v. Dale*, 207 A.D.3d 651 (2d Dep't 2022). The court found that any error in declining to suppress Dale's statements during interrogation was harmless because the evidence of her guilt "was overwhelming" even without reference to those statements. *Id.* at 651. The court also declined to review Dale's ineffective assistance claim on the basis that it was a "mixed claim," appearing in part on the record and in part outside the record, and more appropriate instead for a C.P.L. § 440.10 hearing. *Id.* at 652. Finally, the court found that the sentence imposed by the trial court was not excessive. *Id.*

Dale's appellate counsel then sought leave to appeal the Appellate Division's decision to the New York Court of Appeals. Judge Riviera denied this application on October 4, 2022. *See* Opp'n, Ex. N ("Court of Appeals Order") 2, ECF No. 6-21; *People v. Dale*, 39 N.Y.3d 939 (2022).

*E. District Court Proceedings*

Dale, proceeding *pro se*, filed the instant petition on December 27, 2023.[5] Pet. 15. Construed liberally, her petition raises three main grounds: (1) petitioner was provided ineffective assistance of counsel when her trial attorney failed to inform the jury that she was "locked" in the interrogation room, Pet. 6; (2) by being interrogated under the false impression that she was not in custody, petitioner was coerced to waive her *Miranda* and speedy arraignment rights, Pet. 7; and (3) petitioner was deprived of her right to a fair trial when her videotaped interrogation statements were shown to the jury at trial, Pet. 9.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *Fox v. Bezio*, No. 10-cv-02986, 2011 WL 837158, at *5 (E.D.N.Y. Mar. 7, 2011) (citing 28 U.S.C. § 2254(d)). Under AEDPA, federal habeas relief is available when "a person in custody pursuant to the judgment of a State court . . . is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal habeas relief is only available for a violation of federal law, as "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).[6]

AEDPA provides that an "application for a writ of habeas corpus . . . pursuant to the judgment of a State court shall not be granted with respect to any claim that was

---

[5]    Under the "prison mailbox" rule, a *pro se* prisoner's habeas petition is deemed filed at the moment she gives it to prison officials to forward to the Court. *See Noble v. Kelly*, 246 F.3d 93, 97–98 (2d Cir. 2001).

[6]    Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

adjudicated on the merits in State court proceedings," unless adjudication of that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). A decision on the merits is "contrary to . . . clearly established" federal law if the state court (1) arrives at a conclusion opposite to one reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Jones v. Perez*, No. 14-cv-03971, 2015 WL 5923548, at *4 (E.D.N.Y. Oct. 10, 2015) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct controlling legal principle announced by the Supreme Court but unreasonably applies that principle to the facts of the petitioner's case. *Id.* (citing *Williams*, 529 U.S. at 407). This deferential standard of review, known as "AEDPA deference," "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

AEDPA deference applies only to federal claims "adjudicated on the merits" in state court. 28 U.S.C. § 2254(d). Merits adjudication occurs when a state court "disposes of the claim on the merits" and "reduces its disposition to judgment." *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007). When multiple state courts consider a case, including on direct appeal, the Court reviews the last state court decision that explained its reasoning, even if a higher court reviewed the case. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018) ("[T]he federal court should 'look through' the unexplained decision to the last related

state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

When there has been an adjudication on the merits, AEDPA deference "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). In practice, this means that a district court may not overturn a state court's application of federal law if it is merely incorrect, but only if it is objectively "unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). In other words, a district court may overturn a state court's application of federal law only if it is "so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents." *Baez v. Royce*, No. 20-cv-01669, 2024 WL 2022090, at *8 (E.D.N.Y. May 3, 2024) (quoting *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013)).

The Court is obliged to construe *pro se* pleadings liberally and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983). Nevertheless, a *pro se* litigant is not exempt "from compliance with relevant rules of procedural and substantive law." *Williams v. People*, No. 23-cv-10027, 2024 WL 421130, at *1 (S.D.N.Y. Jan. 4, 2024) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

Each of petitioner's grounds for relief must be denied both for failing to meet AEDPA's procedural requirements, as well as on the merits. For each ground, the Court first addresses how the Petition fails to meet procedural requirements and then proceeds to the merits.

I.    Ground One: Ineffective Assistance of Counsel

The Petition asserts that Dale's trial counsel, Raymond Colon, was ineffective for failing to raise her allegation that she was "locked" in the interrogation room prior to being read her *Miranda* rights. Pet. 6. Because Colon did not raise this issue, Dale claims that the jury was "blinded from the unjust tactics that led to [her] conviction." Pet. 6. In the Reply, petitioner states that this ground was addressed by the 440 Motion, which asserted that Colon "did not argue the fact of how [Dale's] statement was made." Reply 7. Furthermore, the Reply argues that petitioner received ineffective assistance because Colon did not inform the jury that Dale was not given "the option to leave" the precinct "on her freewill." Reply 7.

A.    *Ground One is Unexhausted and Procedurally Barred*

Dale's ineffective assistance claim is not cognizable because she failed to present it on direct appeal. And, even were the Court to construe her 440 Motion as raising this claim, Ground One would fail because Dale failed to fully appeal her 440 Motion.

i.    *Exhaustion*

Before considering the merits of a habeas petition, a federal court must ensure that the petition complies with AEDPA's procedural requirements. Under 28 U.S.C. § 2254(b)(1)(A), a habeas petition "shall not be granted unless it appears that . . . [petitioner] has exhausted the remedies available in the courts of the State . . . ." A petitioner exhausts remedies by "(i) present[ing] the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts); and (ii) inform[ing] that court of both the factual and legal bases for the federal claim." *Diuglielmo v. Senkowski*, 42 F. App'x 492, 494 (2d Cir. 2002). In New York, a defendant must exhaust his claims by seeking leave to appeal any denials of relief

to the New York Court of Appeals. *See Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000). This requirement affords the state system the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995).

A defendant may collaterally attack a conviction by filing a motion to vacate judgment pursuant to C.P.L. § 440.10. *Ortiz v. Heath*, No. 10-cv-01492, 2011 WL 1331509, at *7 (E.D.N.Y. Apr. 6, 2011). Section 440.10 motions are limited to claims that do not appear on the record. *See* C.P.L. §§ 440.10(1)(f) & (2)(b). Thus, a state court must deny a 440.10 motion that is premised on a judgment which, when the motion is made, is "appealable or pending on appeal"; or when sufficient facts appear on the record such that the ground of the § 440.10 motion could have been raised instead on direct appeal. C.P.L. § 440.10(2)(b). A defendant must apply for leave to appeal denial of her 440.10 motion within 30 days of being served with the trial court's decision. *See Thomas v. Greiner*, 111 F. Supp. 2d 271, 276 (S.D.N.Y. 2000). Otherwise, the defendant "has failed to exhaust" her state remedies. *Baez*, 2024 WL 2022090, at *11 (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)). To fully exhaust a C.P.L. § 440 motion, a party must obtain a decision from the Appellate Division regarding her leave application. *Diaz v. Smith*, No. 04-cv-01337, 2007 WL 946196, at *4 n.10 (S.D.N.Y. Mar. 27, 2007); *Brooks v. Walker*, No. 01-cv-00760, 2006 WL 1875103, at *8 (N.D.N.Y. July 3, 2006).

ii.    *Procedural Default and Independent and Adequate State Grounds*

A petitioner who has failed to follow the state's procedural requirements for presenting his federal claims "has deprived the state courts of an opportunity to address those claims in the first instance." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). A petitioner who has done so "has procedurally defaulted his claims." *O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 854 (1999) (Stevens, J., dissenting). When a petitioner has failed to exhaust state remedies, and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find those claims "procedurally barred," the federal habeas court should consider the claim to be procedurally defaulted. *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1). These defaulted claims "are by definition exhausted because a petitioner would no longer have any remedies available in the courts of the State within the meaning of 28 U.S.C. § 2254(b)." *See Baez*, 2024 WL 2022090, at *9. Unlike dismissal for failure to exhaust, dismissal for procedural default constitutes "an adjudication on the merits," to which AEDPA deference applies. *Dominique v. Artus*, 25 F. Supp. 3d 321, 330–31 (E.D.N.Y. June 17, 2014) (quoting *Turner v. Artuz*, 262 F.3d 118, 122–23 (2d Cir. 2001)).

Where there has been actual and explicit reliance upon procedural default to dispose of a claim in state court, there is an "adequate and independent state ground" for the judgment, prohibiting federal habeas review. *Parker v. Wenderlich*, No. 14-cv-05896, 2015 WL 5158476, at *8 (citing *Harris v. Reed*, 489 U.S. 255, 261–63 (1981)). In a § 2254 petition, a federal court faced with a claim that was dismissed by the state court pursuant to an "independent and adequate state ground" for dismissal must defer to the state law ruling and decline to review the federal claim. *Dominique*, 25 F. Supp. at 332 (citing *Whitley v. Ercole*, 642 F.3d 278, 285 (2d Cir. 2011)). To bar federal habeas review, the state court's decision must rest not only on an independent procedural bar under state law, but also one that is "adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191–92 (2d Cir. 2007). A state procedural bar is "adequate" if it is "firmly established and regularly followed by the state in question in the specific circumstances presented in

the instant case." *Id.* at 192 (citing *Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006)). Procedural default under § 440.10(2) "is generally considered an adequate and independent state ground barring habeas review." *Thompson v. Artus*, No. 10-cv-01443, 2013 WL 6408354, at *7 (E.D.N.Y. Dec. 6, 2013) (citing *Sweet v. Bennett*, 353 F.3d 135, 139–41 (2d Cir. 2003)).

iii.   *Application*

In the first place, Dale did not raise Ground One on direct appeal. The ineffective assistance claim in Dale's habeas petition is based on Colon's failure to raise that she was locked in her interrogation room. Pet. 6. On appeal, however, Dale's ineffective assistance claim was based on Colon's failure "to argue that the People failed to prove the validity" of Dale's *Miranda* waiver via focus on: (1) her questions at the end of her second day of interrogation; and (2) the detectives' failure to re-administer or remind her of her *Miranda* waiver. *See* Appellant Br. 41, ECF No. 6-15. Neither Dale's state appeal brief nor the Second Department's opinion mention Dale's allegation of being locked in her interrogation room. Because Ground One is not the "substantial equivalent" of the claims raised on petitioner's direct appeal, it was never properly exhausted. *See Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003).

Even if a federal habeas petition ground was not technically exhausted, "a federal court may deem it exhausted if there are no avenues available in the state judicial system for reviewing the claim." *Parker*, 2015 WL 5158476, at *9 (citing 28 U.S.C. § 2254(b)(1)). Because petitioner has already perfected her appeal in state court, *see People v. Dale*, 39 N.Y.3d at 939, there are no further paths to appeal her claim. As a result, it must be deemed procedurally defaulted. *See Parker*, 2015 WL 5158476, at *9 (citing *Sweet*, 353 F.3d at 140). On this basis alone, Ground One must be denied.

Moreover, Ground One is also procedurally defaulted to the extent Dale raised it on collateral attack. Petitioner herself maintains that Ground One was raised in her 440 Motion. Pet. 6. As an initial matter, Ground One is an inappropriate basis for a Section 440.10 motion because it pertains "directly to issues that were addressed, on the record, during the course of the suppression hearing and trial." *See* 440 Order 3, ECF No. 6-13; *see also* C.P.L. § 440.10(2)(b). Additionally, exhaustion of a § 440.10 motion requires appeal of that claim to the Appellate Division. *See also Rosas v. Artus*, No. 05-cv-08440, 2007 WL 1573919, at *2 (S.D.N.Y. May 24, 2007). Dale is unable to claim that she exhausted state remedies if she possessed additional remedies that she did not exercise. *Galdamez v. Keane*, 394 F.3d 68, 73–74 (2d Cir. 2005). Because she never appealed denial of her 440 Motion, and because she has missed the window to seek further review of this claim in state court, while her ineffective assistance claim may be "deemed exhausted" for purposes of federal habeas review it "is nevertheless procedurally defaulted." *Baez*, 2024 WL 2022090, at *13 (citing *Thomas*, 111 F. Supp. at 276–77 (collecting cases)); *cf. Parker*, 2015 WL 5158476, at *10 (finding petitioner's claim "unexhausted but procedurally defaulted").

      iv.    *Cause, Prejudice, and Miscarriage of Justice*

A court may still review an unexhausted and procedurally defaulted claim if petitioner demonstrates (1) cause and actual prejudice, or (2) that failure to consider the claim would result in a miscarriage of justice, *i.e.*, that she is actually innocent. *Parker*, 2015 WL 5158476, at *10 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Petitioner concedes that she did not seek leave to appeal the 440.10 decision because she "[n]ever received an answer." Pet. 6. *See also* Pet. 8, 10 (claiming the same as to her collateral attack of Grounds Two and Three). However, petitioner's threadbare allegation

that she never received a response does not constitute cause for her failure to appeal denial of her 440 Motion. *See Parker*, 2015 WL 5158476, at *10 (collecting cases); *see also Glover v. Burge*, No. 05-cv-00393, 2007 WL 9183249, at *4 (W.D.N.Y. Oct. 22, 2007) (finding no good cause where petitioner alleged he could not timely file brief due to prison lockdown); *see generally Anderson v. O'Gara*, No. 01-cv-05712, 2002 WL 1633917, at *4 (S.D.N.Y. July 23, 2002) (declining to toll AEDPA limitations period where petitioner did not receive notice of state court's denial of petition for writ of error *coram nobis* and "never inquired with the Appellate Division of the status of his petition"). Even when a petitioner alleges that prison officials hindered her ability to comply with procedures, she still must adduce some sort of proof that this is the case. *White v. West*, No. 04-cv-02886, 2010 WL 5300526, at *19 (E.D.N.Y. Dec. 6, 2010). Since Dale has failed to demonstrate cause for her procedural default, the Court need not analyze prejudice. *Parker*, 2015 WL 5158476, at *10 (citing *McCleskey v. Zant*, 499 U.S. 467, 502 (1991)).

There is also no evidence of a "fundamental miscarriage of justice," *i.e.*, that Dale is actually innocent, in this case. This "extremely rare" exception is to be applied only in exceptional circumstances. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Dale does not purport to offer "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" that was not presented at trial. *Id.* at 324. In fact, Dale concedes that "innocence is not the argument" in her petition, as it was "argued in Court" before the jury. Reply 9. As such, the Court may not review Dale's defaulted claim on this ground.

For the reasons above, Dale's ineffective assistance of counsel claim is procedurally barred and not subject to habeas review.

v.    *Inappropriateness of a Stay*

Although a federal court may stay a habeas proceeding to give a defendant an opportunity to exhaust her remedies in state court, the federal court should deny that claim on the merits when it is "plainly meritless." *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) ("[T]he district court would abuse its discretion if it were to grant [defendant] a stay when his unexhausted claims are plainly meritless.") As the discussion below bears out, a stay is improper because each one of petitioner's grounds are meritless.

B. *Ground One Fails on the Merits*

Even were Ground One not procedurally barred, it would fail on the merits. To prevail on an ineffective assistance claim, Dale must prove that (1) Colon's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for Colon's errors, the result of the trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). To satisfy prong (2), "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). When the claim at issue is one for ineffective assistance of counsel, AEDPA review is "doubly deferential" because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Woods v. Etherton*, 578 U.S. 113, 117 (2016).

Petitioner's basis for Ground One—that Colon failed to raise Dale's allegation that she was locked in the interrogation room at trial—is meritless. For one, Colon *did* raise this at trial. During his cross-examination of Detective Teahan, one of petitioner's interrogators, Colon inquired whether the interview room was locked and whether the defendant was free to leave at the beginning of the interview. Trial Tr. 203:7–213:5, ECF

No. 6-3. Detective Teahan testified that the interview room door was unlocked at all times. Trial Tr. 204:6–8. Counsel even went as far as to inquire whether Dale's holding room, where she was held between interrogations, was locked. Trial Tr. 207:16–208:9. Detective Teahan responded that he did not know. Trial Tr. 213:3–5.

Moreover, during the *Huntley* hearing, Colon repeatedly inquired into whether Dale was locked in the interrogation room. For example, Colon asked Detective Teahan whether the door to the interview room was "locked or unlocked." Huntley Hr'g Tr. 18:21–22, ECF No. 6-1. At the time, Detective Teahan stated that he did not remember. Huntley Hr'g Tr. 18:23. Because Justice Cyrulnik found Detective Teahan credible and petitioner presented no evidence of the locked door, Colon had no obvious basis to raise the same allegation at trial and expect a different answer. And yet, at trial, Colon heeded Dale's suggestion and tried again to no avail.

This testimony is an obstacle for Dale's allegations regarding the conditions of her interrogation. But it also completely undermines her suggestion that Colon's performance fell below an "objective standard of reasonableness." Colon raised the question of whether Dale was locked in a room at any point of her interrogation numerous times, both during Dale's *Huntley* hearing and her criminal trial. Especially as the Court must strongly presume that Colon made "all significant decisions in the exercise of reasonable professional judgment," *Woods*, 578 U.S. at 117, it will not accept petitioner's invitation to "confus[e] true ineffectiveness with mere losing tactics and accord[] undue significance to retrospective analysis." *Fagan v. Kuhlman*, 267 F. Supp. 2d 388, 408 (E.D.N.Y. 2003).

To the extent petitioner contends that Colon's performance on this score was not objectively reasonable because he did not emphasize the issue to her satisfaction, the record belies petitioner's claims and *Strickland*'s prejudice prong is not satisfied.

Specifically, the *Huntley* court, which watched the video from "beginning to end," did not point to any evidence of a locked door. Huntley Arg. Tr. 7:18–9:2, ECF No. 6-1. In such cases, the "transcript . . . speaks for itself." *Granger v. Artus*, No. 17-cv-00888, 2022 WL 3228259, at *17 (E.D.N.Y. Aug. 10, 2022). Especially through the "doubly deferential lens applicable to ineffectiveness claims," the Court sees no supported basis for an allegation of unconstitutional ineffectiveness.

## II.    Ground Two: Deprivation of Privilege Against Self-Incrimination

As a second ground, Dale asserts she was unable "to protect [her] right against self-incrimination." Pet. 7. Specifically, Dale claims that, although she was told by Detective Teahan that she was not under arrest, she was both "kep[t] . . . in the precinct to incriminate [her]self" through interrogation and, during that time, was coerced to waive her right to a speedy arraignment. Pet. 7. Petitioner seems to argue that Detective Teahan's representations were meant to "appear harmless" while eliciting her inculpatory statements and waiver of her speedy arraignment rights. Reply 8. Together, the Court liberally construes these claims to dispute the trial court's failure to suppress Dale's inculpatory statements during interrogation.

### A.  *Ground Two is Procedurally Barred*

Ground Two fails before merits review because it was raised in Dale's unexhausted 440 Motion and is thus procedurally defaulted.

#### i.    *Application*

Dale's 440 Motion argues that—contrary to the testimony elicited during the *Huntley* hearing—defendant was "kept in a locked room . . . under the impression that she had to" provide statements and sign documents in order to leave. *See* 440 Mot. 4, ECF No. 6-11. Construing Dale's petition liberally, the Court assumes that this ground refers

both to introduction of her inculpatory statements during interrogation and waiver of her right to a speedy arraignment. As with Ground One, Dale maintains that she "raise[d] this issue through" a collateral attack. Pet. 8.

As discussed above, Dale's 440 Motion was not appealed to the Second Department. To properly exhaust her claims, Dale was required to seek leave to appeal the order denying her 440 Motion. *See LaRosa v. Kirkpatrick*, No. 15-cv-07008, 2019 WL 1458252, at *12 (E.D.N.Y. Mar. 31, 2019) (citing *Colon v. Sheahan*, No. 13-cv-06744, 2016 WL 392443, at *3 (S.D.N.Y. July 14, 2016)). She never did so and, as discussed, her 30-day window to appeal denial of that motion has been closed for over seven years. *See* C.P.L. § 460.10(4)(a); 440 Order 7, ECF No. 6-13. The Court accordingly deems Ground Two procedurally defaulted. *Baez*, 2024 WL 2022090, at *13 (citing *Thomas*, 111 F. Supp. 2d at 276).

Furthermore, Ground Two is procedurally barred because Dale could have but failed to bring it on direct appeal. *See* C.P.L. § 440.10(2)(b). The state court reviewing Dale's 440 motion noted that Dale "argued for suppression . . . before the court and jury rendered their respective decisions." 440 Order 3, ECF No. 6-13.  Because the issue of Dale's inculpatory statements was "addressed, on the record, during the course of the suppression hearing and trial," the court concluded that Dale could have raised the issue on direct appeal. 440 Order 3. Accordingly, the court found that Dale's 440 motion on these grounds was procedurally barred. *See* 440 Order 3. Where, as here, a petitioner's "bases for relief are plain from the trial record," a "motion court's invocation of § 440.10(2) [i]s an adequate and independent state law ground," barring habeas review. *Thompson*, 2013 WL 6408354, at *7; *see also Dominique*, 25 F. Supp. 3d at 332 (a claim

dismissed under § 440.10(2)(b) is dismissed "independent[ly] of federal constitutional law").

Whereas Ground Two alleges that Dale involuntarily waived her right against self-incrimination—via waiver of a speedy arraignment—under coercion, her direct appeal only challenges the adequacy of the administering of her *Miranda* rights. If a state court defendant unjustifiably fails to argue a ground on direct appeal despite a sufficient record, and instead challenges that ground via collateral attack, C.P.L. 440.10(2)(c) "requires a state court to deny a [440.10 motion] based on a constitutional violation." *Sweet*, 353 F.3d at 139. This rule exists "to prevent Section 440.10 from being employed as a substitute for direct appeal when the defendant was in a position to raise" that constitutional violation on appeal. *Id*. Thus, because Dale's appellate counsel unjustifiably failed to argue Ground Two on direct appeal despite a sufficient record, *see* 440 Order 3, ECF No. 6-13, it is procedurally defaulted for purposes of federal habeas review.

        ii.    *Cause and Prejudice*

As discussed, petitioner's bare allegation that she never received a response does not constitute cause for her failure to appeal denial of her 440 Motion. *See Parker*, 2015 WL 5158476, at *10 (collecting cases). Because there is no cure for Dale's procedural default, and because petitioner does not allege actual innocence, Ground Two of the petition must be denied.

    B.  *Ground Two Fails on the Merits*

Even were Ground Two not procedurally defaulted, it would fail on the merits. The Appellate Division reached the question of the voluntariness of defendant's statements during interrogation and whether she "knowingly, intelligently, and voluntarily waived . . . her *Miranda* rights . . . prior to making the statements." *Dale*, 207 A.D.3d at 651. Without

addressing this question, the Second Department held that "any error in declining to suppress the defendant's videotaped statements to law enforcement officials was harmless because the evidence of defendant's guilt, *without reference to those videotaped statements*, was overwhelming and there was no reasonable possibility that such an error contributed to the convictions." *Id.* (emphasis added). As set forth below, the Court finds reasonable the Second Department's holding that any improper introduction of involuntary statements was harmless. Accordingly, Ground Two also fails on the merits.

Under AEDPA, state-court harmless error determinations qualify as adjudications on the merits. *Brown v. Davenport*, 596 U.S. 118, 142 (2022). When a state court has ruled on the merits of a state prisoner's claim, a federal court cannot grant relief without first applying both the test the Supreme Court outlined in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and then the AEDPA deference standard. *Brown*, 596 U.S. at 122.

Under *Brecht*, "habeas relief is not warranted unless, in light of the record as a whole, the constitutional violation had substantial and injurious effect or influence in securing the defendant's conviction." *Diaz v. Miller*, No. 22-1835, 2023 WL 4363245, at *1 (2d Cir. July 6, 2023) (summary order) (quoting *Perkins v. Herbert*, 596 F.3d 161, 175 (2d Cir. 2010)). If the last reasoned state-court decision held that an error was harmless, a federal court cannot grant habeas relief unless it concludes that the state court's harmlessness analysis was "contrary to" or an "unreasonable application of" Supreme Court precedent. *Diaz*, 2023 WL 4363245, at *2 (quoting *Brown*, 596 U.S. at 127). Therefore, it is petitioner's burden to show that "no fairminded jurist" applying Supreme Court precedent "could reach the state court's conclusion" that admitting the videotaped statements was harmless. *Id.* (quoting *Brown*, 596 U.S. at 135).

Here, a fairminded jurist could certainly reach the Second Department's determination that admitting Dale's videotaped statements was harmless. In fact, the record besides the videotaped statements made such a finding reasonable. For one, multiple trial witnesses testified as to facts implicating Dale in Ethan's death. Both Ethan's mother and teacher testified that he had no visible injuries in the day preceding his death. Trial Tr. 50:1–51:4, ECF No. 6-5. Likewise, Kenroy Skeete testified that on February 25, 2015, he returned to the apartment to find only Dale and an unresponsive Ethan. Trial Tr. 314:17–316:9, ECF No. 6-7. Furthermore, even prior to departing for the precinct, Dale admitted to an EMT that she had hit Ethan with a belt earlier that day. Trial Tr. 70:2–72:3, ECF No. 6-5. That belt was subsequently recovered from the apartment. *See, e.g.*, Trial Tr. 72:2–3. At trial, the doctor who performed Ethan's autopsy testified that he died due to blunt-impact injuries; that his body was covered in bruises; that his injuries were consistent with having been struck by a belt; that his knee bore a "classical" marking of impact by a belt buckle prong; and that the lack of signs of healing suggested the beating occurred shortly before his death. *See* Trial Tr. 293:15–300:21, ECF No. 6-7. These observations were evinced by photographs taken after Ethan's death. *See, e.g.*, Trial Tr. 239:25–244:14, ECF No. 6-6.

In light of the overwhelming evidence of petitioner's guilt, the Court does not consider admission of petitioner's videotaped statements to have had a substantial and injurious effect or influence in the jury verdict. *See Clark v. Cunningham*, No. 09-cv-03578, 2014 WL 1399416, at *20 (E.D.N.Y. Apr. 10, 2014); *see also Nova v. Bartlett*, 211 F.3d 705, 709 (2d Cir. 2000). Accordingly, the Appellate Division's finding of harmless error was reasonable and Ground Two must be denied.

Even were the Court to find otherwise, petitioner has failed to demonstrate that Judge Cyrulnik's *Huntley* ruling—the last-reasoned state court decision on whether Dale's videotaped statements were voluntary—was either an unreasonable determination of the facts nor an unreasonable application of clearly established federal law as determined by the Supreme Court. The Court was to "review all of the surrounding circumstances" of Dale's interrogation to see whether Dale's statements were voluntarily made and whether her "will ha[d] been overborne." *People v. Dale*, 207 A.D.3d at 651 (collecting cases); *see also Dickerson v. United States*, 530 U.S. 428, 434 (2000) (articulating the Supreme Court's voluntariness inquiry). Judge Cyrulnik engaged in this analysis and drew an informed conclusion. For one, Judge Cyrulnik heard the testimony of Detective Teahan and found it credible. Huntley Arg. Tr. 7:18–19, ECF No. 6-1. Justice Cyrulnik also reviewed the interrogation video and found that, on February 25, 2015, Dale received her *Miranda* warnings, indicated she understood each question, and clearly agreed to speak with officers. Huntley Arg. Tr. 7:19–20; Huntley Arg. Tr. 7:24–8:3.

Justice Cyrulnik observed Dale to be "still upset but calm during the interview process." Huntley Arg. Tr. 8:13–15, ECF No. 6-1. She observed that the video depicted Dale being offered refreshments and bathroom breaks. Huntley Arg. Tr. 8:15–18. Moreover, she observed that, even though Dale was "extremely upset at times," she "did not appear to be overwhelmed to the point of not understanding what was taking place during the interview," as evinced by her consistent statements. Huntley Arg. Tr. 8:20–24. In light of all of this, because the video did not at all indicate Dale "was coerced or force to speak to officers at any point," the court found that her "statements were voluntary" and denied her motion to suppress. Huntley Arg. Tr. 8:15–16; 9:23–10:1.

III.    Ground Three: Right to Fair Trial

As a third ground for relief, Dale claims that her right to a fair trial was violated because the statements illegally obtained from her during interrogation were admitted. Pet. 8. Presumably to further argue that she was coerced, Dale also claims that, during the *Huntley* hearing, Detective Teahan made contradicting statements regarding administration of the arraignment waiver. Pet. 8. In support of this allegation, she references a transcript segment suggesting that Detective Teahan asked her to sign the waiver, *see* Pet. 24; and another segment quoting language that she signed the waiver of her "own free will," *see* Pet. 27. Applying liberal construction, the Court interprets Ground Three as a claim that petitioner's due process rights were violated due to the introduction of her illegally obtained statements at her criminal trial.

A.    *Ground Three is Unexhausted and Procedurally Barred*

Ground Three is essentially duplicative of Ground Two. Accordingly, Ground Three must be denied for failing to meet AEDPA's basic procedural requirements for the same reasons as Ground Two. Ground Two argues that petitioner's videotaped statements should have been suppressed due to alleged deception during her interrogation. Ground Three argues that petitioner's right to a fair trial was violated because those statements were not suppressed.

To the extent that it disputes the voluntariness of petitioner's statements during interrogation or waiver of a speedy arraignment, Ground Three is procedurally defaulted. Although these arguments could be conceived of as "exhausted" now that they are no longer appealable to the Second Department, they are nonetheless defaulted. *See Baez*, 2024 WL 2022090, at *13 (citing *Thomas*, 111 F. Supp. 2d at 276). Dale's references to "Attachment (6)" and "Attachment (7)" seem to challenge whether she voluntarily waived

24

her right to speedy arraignment by highlighting Detective Teahan's *Huntley* testimony that he encouraged her to sign the waiver. *See* Pet. 24, 27. But this reference supports previous grounds raised by Dale, not new grounds, and thus need not be analyzed separately.

Because petitioner fails to allege separate "good cause" for her default of Ground Three, and because she does not claim actual innocence, Ground Three must be denied.

B. *Ground Three Fails on the Merits*

Given Ground Three is basically duplicative of Ground Two, it fails on the merits for similar, though not identical, reasons as Ground Two. First, as discussed above, the evidentiary ruling in question easily passes AEDPA muster. Second, admission of Dale's inculpatory statements did not deprive her of a fundamentally fair trial, given the other strong evidence against her.

Firstly, as explained above, Dale has not shown that Judge Cyrulnik's *Huntley* ruling was either an unreasonable determination of the facts or an unreasonable application of clearly established federal law as determined by the Supreme Court. The Court reviewed "all of the surrounding circumstances" of Dale's interrogation and decided that her will had not "been overborne" so as to render her statements involuntary. *Dale*, 207 A.D.3d at 651; *see also Dickerson*, 530 U.S. at 434. The Court has reviewed both Justice Cyrulnik's decision, as well as the video record, and finds it reasonable.

Secondly, petitioner has not shown her due process rights were violated at trial. To obtain habeas relief on a due process claim involving the introduction of evidence at trial, Dale must show that "an erroneous evidentiary ruling was so pervasive as to have denied [her] a fundamentally fair trial, or so extremely unfair that its admission violates fundamental conceptions of justice." *Williams v. Jacobson*, No. 15-cv-05319, 2016 WL

4154700, at *17 (S.D.N.Y. Aug. 5, 2016) (quoting *Alston v. Racette*, No. 13-cv-04392, 2014 WL 2453336, at *17 (S.D.N.Y. May 22, 2014)), *report and recommendation adopted*, 2016 WL 7176648, at *1 (Dec. 7, 2016). Additionally, "viewed objectively in light of the entire record before the jury," the challenged evidence must have been "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Hamilton v. Lee*, 94 F. Supp. 3d 460, 474–75 (E.D.N.Y. 2015). It must have been "crucial, critical," and "highly significant." *Id.*

Even were the Court to find suppression improper, which it does not, as previously discussed, the trial record was otherwise replete with evidence suggesting that no evidentiary ruling was "so pervasive" as to have denied Dale to a fundamentally fair trial. Dale's videotaped statements were presented to the jury alongside the testimony of multiple lay witnesses and an expert medical witness, as well as physical and photographic evidence. *See supra* Section II.B. Viewed objectively in light of the entire record, this evidence overwhelmingly suggests that Dale's videotaped statements were not sufficiently material as to deprive her of her due process rights. *See Torres v. Keane*, 159 F. App'x. 247, 249 (2d Cir. 2005) ("[G]iven the overwhelming evidence presented at trial of petitioner's guilt—evidence that was independent of [challenged evidence], and which petitioner fails to rebut here—any error in the admission of the challenged [evidence] did not 'amount to a denial of due process,' because the [challenged evidence] was not 'sufficiently material. . . .'").

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied and the case is dismissed. As Dale has failed to make a substantial

showing that she was denied any constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c).

    **SO ORDERED.**

                                       */s/ Natasha C. Merle*
                                         NATASHA C. MERLE
                                         United States District Judge

Dated:      February 13, 2025
               Brooklyn, New York